UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERIBERTO QUIROZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:25-cv-01033-JMS-CSW |
| | ) | |
| TRENT ALLEN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Eriberto Quiroz has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 2.] He challenges a prison disciplinary proceeding in which he was found guilty of Offense 220, Engaging in Unauthorized Financial Transaction, and sanctioned with a 30-day loss of good-time credits, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 17-3.] For the reasons explained below, the disciplinary proceeding did not violate Mr. Quiroz's due process rights and his habeas petition is **DENIED**.

**I.
LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the

disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On December 19, 2024, Officer Alexandra Carson wrote a Conduct Report in which she stated:

> On 12/19/2024, at approximately 8:09 am, I, Officer A. Carson, was working in the DHB office when I/I Murphy, Robert #117550 walked into the office to ask me a question. When leaving I/I Murphy, Robert #117550 stopped in the Lay Advocate room to talk to I/I Quiroz, Eriberto #219483. When walking up to I/I Quiroz, Eriberto #219483, I/I Murphy, Robert #117550 stated, "Hey Q, you get that money to dough boy (Sampson, Dejuan #951830)?" By engaging in the discussion of moving monies from one Incarcerated Individual to another without prior authorization, the aforementioned action violates DHB code 220 Engaging in Unauthorized Financial Transaction.

[Filing No. 17-1 at 1.]

Mr. Quiroz was notified of the charge on December 27, 2024, when he received a copy of the Conduct Report and the Screening Report. [Filing No. 17-1 at 2; Filing No. 17-2 at 1.] He pled not guilty to the offense, did not request a lay advocate, requested to call Mr. Murphy as a witness, and requested as physical evidence "camera 'what transaction.'" [Filing No. 17-2 at 2.] Officer Carson noted on the Screening Report for Mr. Quiroz's request to call Mr. Murphy "(waived – Denied. No expected testimony given)." [Filing No. 17-2 at 2.] As to Mr. Quiroz's request for "camera ' what transaction,'" Officer Carson wrote "(No Audio – Video completed)." [Filing No. 17-2 at 2.]

Subsequently, Mr. Quiroz submitted a Notice to Lay Advocate/Witness to Lt. M. Pfleeger, in which he asked "[w]hat did Sgt. Ernest say when you asked her, about what Ofc. Carson said

2

she heard Eriberto Quiroz…say?" [Filing No. 17-5.] Lt. Pfleeger responded, "[s]he heard another Offender ask Ofn Quiroz a question and Offender Quiroz did not reply back." [Filing No. 17-5.]

On January 3, 2025, the disciplinary hearing officer ("DHO") completed two Reports of Disciplinary Hearing Video Evidence Review. [Filing No. 17-4; Filing No. 17-6.] In the first Report, he wrote that he reviewed "Video on Exacqvision Files," and that Mr. Quiroz was not permitted to view the video because it "[w]ould allow [him] to know the angles and capabilities of the prison's surveillance system." [Filing No. 17-6.] he wrote further that:

> I Sgt. J. Pardue attempted to review video footage for ISR 24-12-003571.
>
> Offender Quiroz…requested that I review body camera footage from Officer Carson's body camera for the date of 12/19/24 at around 8:09 AM. I was advised that there was not any footage to pull from.
>
> Offender Quiroz…requested Offender Murphy…as a live witness. This request may be accommodated so long as the facility is not on any type of restricted movement when the hearing takes place. Quiroz will need to submit a list of questions or expected testimony for me to review. This request will need to be submitted to DHB staff by 1/5/25 or it will be denied.
>
> Offender Quiroz…requested [O]ffender Tagliaferri…as a live witness. This offender was not present at the time of incident. This request is being denied for that reason.

[Filing No. 17-6.][1]

The DHO then completed a second Report of Disciplinary Hearing Video Evidence Review in which he stated that Mr. Quiroz was not permitted to review video recorded evidence because it "[w]ould allow [him] to know the angles and capabilities of the prison's surveillance system." [Filing No. 17-4.] He summarized the video evidence as follows:

---

[1] Neither party submitted documentation reflecting Mr. Quiroz's request that Mr. Tagliaferri serve as a witness.

3

    8:09:09 AM – Offender Murphy…can be seen entering into the waiting area of DHB.

    8:09:12 AM – Murphy walks into the officer's area of DHB where Officer Carson can be seen sitting at a desk.

    8:09:31 AM – Murphy exits the officer's area and enters a side room with nothing in his hands.  Murphy can be seen slightly moving the door and moves out of video.  At this time Officer Carson can be seen looking in the direction of the office where Murphy just entered.

    8:10:45 AM – Murphy appears back on video and can be seen speaking.  He can be seen holding a piece of paper in his hands.

    8:11:09 AM – Murphy exits the side room and re-enters the officer's DHB area.

    8:11:38 AM – Murphy exits the officer's DHB area and re-enters the side office.

    8:12:56 AM – Offender Quir[o]z…can be seen in the office speaking with Murphy.

    8:13:09 AM – Murphy exits the side office and leaves the building.

    8:13:41 AM – Quir[o]z exits the side office and walks into the officer's DHB area.  At this time Quir[o]z and Carson can be seen speaking to each other.

    There is no audio to determine what is being said.

[Filing No. 17-4.][2]

On January 4, 2025, Mr. Quiroz completed a Request for Interview form to Sgt. Ernest in which he stated: "Ask II Robert Murphy…Did I engage to your question about money being given to dough boy."  [Filing No. 2-1 at 1.]  Sgt. Ernest never received the Request for Interview form and if she had, "it would have been taken into account and used as evidence."  [Filing No. 17-14 at 1.]

---

[2] The Court has reviewed two videos that Respondent submitted, and finds the DHO's description of the encounter between Mr. Quiroz and Mr. Murphy as reflected in the videos to be accurate.

A hearing was held on January 15, 2025. [Filing No. 17-3.] Mr. Quiroz appeared at the hearing, pled not guilty, and provided the following statement: "First place I am not guilty. I got asked a question. I never responded. I have a statement from Ernest that Carson didn't hear me say anything. I don't know why I am here. That's why I feel I am not guilty. I didn't engage in anyway. How can I get conduct if I didn't engage." [Filing No. 17-3 at 1.] The DHO considered staff reports, Mr. Quiroz's statement, evidence from a witness ("Pfleeger"), and video evidence. [Filing No. 17-3 at 1.] The DHO noted both that the incident was viewable and not viewable on video. [Filing No. 17-3 at 1.] The DHO concluded that Mr. Quiroz was guilty of Offense 220, Engaging in Unauthorized Financial Transaction, writing:

> All evidence was considered. The statement "Hey Q, you get that money to dough boy" clearly shows Quiroz knew about the financial transaction. Quiroz was engaging in unauthorized financial activity by this discussion, due to money being talked about. No further evidence requested. Time frame not a valid reason for dismissal or not guilty finding.

[Filing No. 17-3 at 1.] Mr. Quiroz was sanctioned with a 30-day loss of good-time credits, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 17-3 at 1.]

Mr. Quiroz appealed to the Facility Head and the Indiana Department of Correction ("IDOC") final reviewing authority, and both appeals were denied. [Filing No. 17-7; Filing No. 17-8; Filing No. 17-9.] He then brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Filing No. 2.]

### III.
#### ANALYSIS

Mr. Quiroz raises two grounds in his Petition: (1) that he was denied a witness statement from Mr. Murphy; and (2) that he was denied video and audio from Officer Carson's body camera.

5

[Filing No. 2.] The Court addresses each argument in turn, but first addresses a Motion to Strike the Defendant's Ex Parte Exhibit K filed by Mr. Quiroz. [Filing No. 20.]

### A. Mr. Quiroz's Motion to Strike Exhibit K

The Respondent submitted two videos related to Mr. Quiroz's disciplinary proceeding, which show Mr. Quiroz, Mr. Murphy, and Officer Carson on December 19, 2024. [Filing No. 18.] Mr. Quiroz has moved to strike the videos, arguing that they are "misleading in nature and will cause unfair prejudice." [Filing No. 20 at 1.] He asserts that the fact that there is no audio on the videos makes them prejudicial and that he "has claimed that another Officer did give him and others permission to have one of the food trays that were on the dining table." [Filing No. 20 at 1-2.]

In his response, the Respondent argues that Mr. Quiroz cannot move to strike evidence at this stage of the litigation and that he references conduct (permission to have food trays) "that is not the basis for the charge and guilty finding of unauthorized financial transaction." [Filing No. 22 at 1-3.] The Respondent notes that Mr. Quiroz requested the videos in advance of the disciplinary hearing and that the DHO focused on the Conduct Report and not on the videos in making his decision. [Filing No. 22 at 4-5.]

Mr. Quiroz did not file a reply.

Even assuming that Mr. Quiroz can properly move to strike Exhibit K, his motion is without merit. First, it is based on his argument that he had permission from an officer to have a food tray, which has nothing to do with the circumstances underlying his habeas petition in this case. Second, the video is not prejudicial or misleading. It merely shows that Mr. Quiroz and Mr.

6

Murphy were in the same area as Officer Carson and were in a conversation, but there is no audio so it does not reflect what was actually said.

Because Mr. Quiroz has not presented any viable argument for why the Court should strike Exhibit K, and because the Court does not find the video prejudicial or misleading in any event, the Court **DENIES** Mr. Quiroz's Motion to Strike the Defendant[']s Ex Parte Exhibit K.  [Filing No. 20.]

    **B.**    **Mr. Quiroz's Petition**

        *1.*    *Denial of Mr. Murphy As a Witness*

Mr. Quiroz argues that he submitted a Request for Interview Form to Sgt. Ernest on January 4, 2025, requesting that Mr. Murphy be asked "[d]id I engage to your question about money being given to dough boy."  [Filing No. 2 at 3.]  He states that "[t]he DHB hearing was held on January 15, 2025, which would have gave Sgt. Ernest enough time to respond or forward this request to whomever would have held the DHB Hearing."  [Filing No. 2 at 3.]  Mr. Quiroz attaches an Affidavit from Mr. Murphy in which Mr. Murphy states:

> On 12-19-2024 when I entered the DHB office and stopped in the lay advocate room and I asked Quiroz…"Hey can you give that Magna to Dough Boy," the word money was never mentioned.  Ofc A. Carson has a vendetta against me I.I. Murphy…due to my traditional Christian values, and her personal life choices.  Ofc Hubbard after the fact pulled me aside and told me "Ofc. Carson would talk bad about me and stated she wished she could fire me." I.I. Murphy…. I.I. Quiroz…did not hear me as he never responded to my question. I.I. Quiroz…was an innocent bystander in Ofc. Carson object hate for me.

[Filing No. 2-1 at 2-3.]  Mr. Quiroz notes that on December 27, 2024 he requested that the DHO ask Mr. Murphy to be a witness and his request was denied.  [Filing No. 2 at 3.]

The Respondent argues that Mr. Quiroz's request to call Mr. Murphy as a live witness at the disciplinary hearing "was denied apparently because [Mr.] Quiroz did not provide [Mr.]

7

Murphy's expected testimony." [Filing No. 17 at 10.] He notes that the DHO informed Mr. Quiroz that he needed to submit a list of questions or expected testimony for the DHO by January 5, 2025 or his request for Mr. Murphy to testify as a witness would be denied. [Filing No. 17 at 10.] The Respondent acknowledges that Mr. Quiroz claims that he submitted a Request for Interview form on January 4, 2025, but states that Sgt. Ernest never received it. [Filing No. 17 at 10.] As for Mr. Murphy's Affidavit in which he states that he asked Mr. Quiroz "Hey can you give that Magna to Dough Boy," the Respondent argues that Mr. Quiroz "makes no mention of the word Magna in his [Request for Interview form]," and that Mr. Murphy's claim that Officer Carson is biased toward him does not "relate to the single question [Mr.] Quiroz wanted [Mr.] Murphy to answer, which was whether [Mr.] Quiroz engaged to [Mr.] Murphy's question about money being given to dough boy." [Filing No. 17 at 10.] The Respondent reiterates that Sgt. Ernest never received the Request for Interview form and that in any event, any error was harmless because: (1) the DHO knew that Mr. Quiroz denied responding to Mr. Murphy's question because Mr. Quiroz stated as much at the disciplinary hearing; (2) the DHO considered the witness statement from Lt. Pfleeger that Mr. Quiroz did not respond to Mr. Murphy's question; and (3) the DHO's finding was based on Mr. Murphy's question to Mr. Quiroz, and not on Mr. Quiroz's lack of a response, and "[t]he definition of offense 220 did not require [Mr.] Quiroz to respond in order for [the] DHO…to find him guilty." [Filing No. 17 at 11-13.]

In his reply, Mr. Quiroz argues that he wanted to ask Mr. Murphy, "Did I engage to your question about money being given to dough boy?," and that "[f]or [the DHO] to say [Mr.] Quiroz had prior knowledge of an unauthorized financial transaction, [Mr.] Quiroz would have had to respond to [Mr.] Murphy's question that he knew of it, which [Mr.] Quiroz never responded and

8

there is evidence from IDOC Staff saying this." [Filing No. 21 at 8.] Mr. Quiroz reiterates his argument that he properly submitted a Request for Interview form. [Filing No. 21 at 8.]

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 857 (7th Cir. 2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).

Assuming that Mr. Quiroz properly submitted a Request for Interview form and that Mr. Murphy would have testified, consistent with his Affidavit, that he asked Mr. Quiroz, "Hey can you give that Magna to Dough Boy," rather than giving "money" to Dough Boy, and that Mr. Quiroz never responded, denying Mr. Quiroz the opportunity to present that testimony was harmless. *Piggie*, 344 F.3d at 678 (harmless error analysis applies to prison disciplinary proceedings); *Jones*, 637 F.3d at 846-47 (errors in a prison disciplinary proceeding that do not prejudice the prisoner are deemed harmless). The standard for a prison disciplinary proceeding is not beyond a reasonable doubt; it is merely "some evidence" of the decision. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). In this case, the Conduct Report, which the DHO explicitly relied upon in finding Mr. Quiroz guilty of committing Offense 220, states that Officer

9

Carson heard Mr. Murphy say to Mr. Quiroz, "Hey Q, you get that money to dough boy?" [Filing No. 17-1 at 1.] Officer Carson's statement in the Conduct Report is some evidence that Mr. Murphy asked Mr. Quiroz about an unauthorized financial transaction, and Mr. Murphy's testimony does not change the fact that Officer Carson has represented that she heard that statement.

Mr. Quiroz also argues that Mr. Murphy's testimony is relevant because it shows that he never responded to Mr. Murphy's question, so he cannot have committed Offense 220. But in order to provide relief, the Court would need to disagree with prison officials' reading of Offense 220 – which appears to be that an inmate need only be on one side of a conversation regarding an unauthorized financial transaction and does not need to actually engage in the conversation. "[T]he Supreme Court has held many times that errors of state law do not support collateral relief in federal court." *Crawford v. Littlejohn*, 963 F.3d 681, 683 (7th Cir. 2020) (holding that district court improperly granted habeas relief based on its finding that prison officials misinterpreted Offense 220 and payment did not actually constitute violation). In order to grant habeas relief based on Mr. Quiroz's argument that he did not violate Offense 220 because he did not answer Mr. Murphy's question, the Court would need to "disagree[ ] with state officials' reading of state law," *id.*, and it is not permitted to do so through a habeas proceeding.

Mr. Quiroz's argument that he was improperly denied the opportunity to call Mr. Murphy as a witness at the disciplinary proceeding does not provide a basis for habeas relief.

      2.    *Denial of Video and Audio From Officer Carson's Body Camera*

In support of his Petition, Mr. Quiroz argues that IDOC "failed to supposedly secure the video and audio [body camera] footage from [Officer] Carson." [Filing No. 2 at 3.] He asserts

that the video would have shown that he did not respond to Mr. Murphy's question. [Filing No. 2 at 3.]

The Respondent argues that the DHO addressed Mr. Quiroz's request for Officer Carson's body camera video and found that "there was not any footage to pull from." [Filing No. 17 at 13-14 (quotation and citation omitted).] He also asserts that any error was harmless because the video would simply show that Mr. Quiroz did not respond to Mr. Murphy's question but "[t]here was already evidence showing that [Mr.] Quiroz did not respond from Lt. Pfleeger's witness statement…as well as from [Mr.] Quiroz himself at the disciplinary hearing." [Filing No. 17 at 14.] The Respondent argues further that to the extent Mr. Quiroz is arguing that Officer Carson violated IDOC's body camera policy, "policy violations are not grounds for habeas relief." [Filing No. 17 at 14.]

Mr. Quiroz does not address his argument regarding Officer Carson's body camera footage in his reply. [See Filing No. 21.]

The "right to due process presumptively entitles inmates to view exculpatory evidence, not only to ensure that the hearing officer considers all relevant evidence, but also to enable the inmate to make use of the evidence and prepare the best defense." *Johnson v. Brown*, 681 F. App'x 494, 496 (7th Cir. 2017) (citing *Piggie*, 344 F.3d at 678). However, "[p]rison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley,* 699 F. App'x at 576. So, when a prison asserts that no video evidence of an incident exists, the petitioner challenging that assertion must provide more than "unsupported speculation" that the video evidence actually exists in order to demonstrate that the prison failed to disclose the evidence. *Wilson-El v. Finnan*, 281 F. App'x 589, 592 (7th Cir. 2008) ("[Petitioner] asserts that an unnamed

11

person later informed him that video evidence was available, but he offers no evidence of the source or reliability of this hearsay. The board was required to disclose material exculpatory evidence to [petitioner], so long as it exists and does not threaten institutional safety. But having the board's affirmation that there was no video, [petitioner's] unsupported speculation that video evidence exists is not enough to demonstrate that the board failed to disclose the evidence.") (citations omitted); *see also Serrano v. Wilson*, 2009 WL 734735, at *1 (N.D. Ind. Mar. 19, 2009) (holding that "because no video of the incident existed, it was not a due process error" to deny the petitioner the evidence and stating, "[i]ndeed, it would have been impossible" for the prison to provide non-existent video evidence).

    Mr. Quiroz has not provided any evidence that Officer Carson's body camera video exists, and instead merely asserts that he requested the video and it was not provided. Because he has not provided any evidence that the Respondent's representation that there is no body camera video is incorrect, his due process rights were not violated when the facility did not provide him with a video. Additionally, to the extent he argues that Officer Carson violated IDOC regulations by failing to have her body camera on during her interaction with Mr. Murphy, it is well-settled that a violation of IDOC policy is not a basis for habeas relief. *See, e.g.*, *Keller v. Donahue,* 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process").

    Mr. Quiroz's argument that he was denied Officer Carson's body camera video does not provide a basis for habeas relief.

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Quiroz to the relief he seeks. Accordingly, Mr. Quiroz's Petition for a Writ of Habeas Corpus, [2], is **DENIED** and the action **DISMISSED**. Additionally, Mr. Quiroz's Motion to Strike the Defendant[']s Ex Parte Exhibit K, [20], is **DENIED**. Judgment consistent with this Order shall now issue.

Date: 12/30/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution:**

Eriberto Quiroz
#219483
Pendleton Correctional Facility
Electronic Service Participant – Court Only

**Electronic Service to:**

David Corey
Indiana Attorney General
david.corey@atg.in.gov